UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CARL S. MACLEOD, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 3:05cv725 (MRK) |
| | : | |
| THE PROCTER & GAMBLE DISABILITY BENEFIT PLAN, THE PROCTOR & GAMBLE CO., and P & G-CLAIROL, INC., | : : : : | |
| | : | |
| Defendants. | : | |

## RULING AND ORDER

This is an appeal of a denial of Mr. Macleod's application for disability benefits from the Proctor & Gamble Disability Benefit Plan (the "Plan"), in which he was enrolled when Proctor & Gamble ("P&G") acquired the Clairol facility of Mr. Macleod's then-employer, Bristol Meyers. Pending before the Court are Plaintiff's Motion for Partial Summary Judgment [doc. # 32] and Defendants' Cross-Motion for Summary Judgment [doc. # 35]. For the reasons that follow, Plaintiff's Motion for Partial Summary Judgment [doc. # 32] is GRANTED IN PART and DENIED IN PART, Defendants' Cross-Motion [doc. # 35] is DENIED, and the case is remanded to the Plan Trustees to consider Mr. Macleod's application for disability benefits in conformity with this opinion.

**I.**

Mr. Macleod was honorably discharged from the U.S. Army on April 30, 2001, after over twenty years of service to the Nation. At the time of his discharge, the military designated him as 70% disabled. *See* Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment [doc. # 33] Ex. A-6. Mr. Macleod became employed at Bristol Meyers' Clairol facility in

March 2001, *see* Amended Complaint [doc. # 19] ¶ 8, before it was acquired by P&G in October 2001, *see id.* ¶¶ 5-6.  Mr. Macleod claims that when P&G acquired the Clairol facility, he confirmed with several representatives of P&G's human resources department that his prior military service would not disqualify him from coverage under the Plan.  *See id.* ¶ 10.  Defendants counter that the individuals with whom Mr. Macleod spoke were not P&G employees.  *See* Defendants' Reply to Plaintiff's Local Rule 56(a)1 Statement [doc. # 39] ¶ 9.  In February 2004, Mr. Macleod was diagnosed with chronic solvent encephalopathy ("CSE").  He continued to work for P&G until October 4, 2004, when his medical providers pronounced him totally disabled.  *See* Pl.'s Mem. in Supp. of Mot. for Partial Summ. J. [doc. # 33] at 4-5.

On October 25, 2004, Mr. Macleod applied for disability benefits under the Plan, but his application was denied four days later, on October 29, 2004.  *See* Am. Compl. [doc. # 19] at ¶ 15.  The letter from the Trustee-appointed Review Board stated that Mr. Macleod's application was denied because his disability resulted from his military service, and was thus excluded from coverage under Article VI, Section I, of the Plan pursuant to the "military exclusion" adopted by the Trustees in March 2003,[1] which the Review Board characterized as requiring the denial of benefits "in cases where the absence is due to the treatment of illness or injury caused by any military service . . . ."  *See* Pl.'s Mem. in Supp. of Partial Summ. J. [doc. # 33] Ex. A-2.

Mr. Macleod appealed the denial of benefits to the Trustees of the Plan on November 23, 2004, *see id.* Ex. A.  On December 16, 2004, the Trustees denied Mr. Macleod's appeal, *see id.* Ex. B.  In the denial, the Trustees cited the "military exclusion," which the Trustees had adopted to

---

[1] There is some confusion in the administrative record regarding whether the Trustees adopted this provision in September 2002 or March 2003, but whether the adoption occurred in September 2002 or March 2003 is not important for the purposes of this suit.

exclude coverage for any injury that occurred as a result of an employee's tenure in the military. *See id.* According to the Trustees, the exclusion applied "irrespective of course of treatment," "if there is potential disability coverage liability from another entity."[2] *Id.*

Defendants claim that this so-called "military exclusion" is a permissible clarification of the Trustees' longstanding interpretation of Article VI, Section 1. Article VI, Section I is quoted at length below:

> Any Participant who becomes totally disabled shall be paid Total Disability benefits while totally disabled in accordance with the following provisions:
> 1. This Plan shall not provide benefits if disability is due to illness, accident or injury which occurred while the Participant was performing work for the Company and for which compensation may be payable or is paid under the terms and provisions of a State or Federal worker's compensation law. The Trustees may suspend the payment of any Plan benefits if there is potential coverage of the disabling illness, accident or injury under the terms and provisions of a State or Federal worker's compensation law until there is a final determination of whether there is such coverage. *If illness, accident or injury occurs while the Participant is working for pay for some person or organization other than the Company, payment of benefits under this Plan shall be made only at the discretion of the Board of Trustees after their review of the facts of the case.* In any event, this Plan shall not pay benefits if there is any purposeful failure to apply for compensation under any State or Federal worker's compensation law in connection with a disability which should be compensable under such law.

Pl.'s Mem. in Supp. of Partial Summ. J. [doc. # 33] Ex. A-4 at 8 (emphasis added). The Trustees contend that Mr. Macleod's CSE "occurred," for the purposes of the Plan, while he worked "for pay for some . . . organization other than the Company," specifically the military, and that therefore this

---

[2] Because of its ultimate decision on the validity of the "military exclusion," the Court need not and does not address the parties' arguments on what constitutes "treatment" for the purposes of the "military exclusion" and whether it is an integral component of the "military exclusion." Likewise, the Court need not and does not address Mr. Macleod's arguments on the meaning of "potential disability coverage liability" except insofar as that phrase might inform an interpretation of Article VI, section I. *See infra* p.9-10.

Plan provision, and the military exclusion specifically, applies to his application for benefits.

## II.

"[A] district court reviews a plan administrator's denial of benefits under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Gibbs v. CIGNA Corp.*, 440 F.3d 571, 575 (2d Cir. 2006) (internal quotation marks omitted). "Where the plan reserves discretionary authority for the administrator, . . . denials are subject to the more deferential arbitrary and capricious standard, and may be overturned only if the decision is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.* (internal quotation marks omitted).

Here, the Plan makes crystal clear that the Trustees retain authority to interpret and apply the Plan. *See, e.g.*, Pl.'s Mem. in Supp. of Mot. for Partial Summ. J. [doc. # 33] Ex. A-4, at 14 ("The Trustees have the discretionary authority to interpret the terms of this Plan and to determine eligibility for and entitlement to Plan benefits in accordance with terms of this Plan."). Thus, to the extent that the parties dispute the meaning or proper application of Plan provisions, the Court applies an arbitrary and capricious standard of review in considering the Trustees' interpretation and application of the Plan. "Nevertheless, where the plan administrator 'imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words, . . . [its] actions may well be found to be arbitrary and capricious.'" *Pulvers v. First Unum Life Ins. Co.*, 210 F.3d 89, 93 (2d Cir. 2000) (alterations in original). Furthermore, "[u]nambiguous language in an ERISA plan must be interpreted and enforced in accordance with its plain meaning. Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Gibbs*, 440

F.3d at 578-79 (citing *Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140, 149 (2d Cir. 1999)).

As a threshold matter, Mr. Macleod argues that Article VI, Section I has no application to his case because his injury did not "occur" while he was "working for pay for some person or organization other than the Company," as required by that provision. The Trustees' determination to the contrary, he argues, was arbitrary and capricious. Mr. Macleod points out that he was only 70% disabled at the time he was discharged from the military and that his military disability rating did not include his later-diagnosed condition of CSE, which is the condition that has totally disabled him. To support his claim, Mr. MacLeod cites the following documents in the record: (1) the Rating Decision he received when he left the Army, *see* Pl.'s Mem. in Supp. of Mot. for Partial Summ. J. [doc. # 33] Ex. A-6, which nowhere mentions CSE or any of its symptoms, and (2) a letter from his treating physician in October 2004, which confirms his diagnosis of CSE, *see id.* Ex. A-1.

The Trustees rejoin that there is ample evidence for concluding that the root cause of Mr. Macleod's CSE originated during his military service, and that thus the injury itself "occurred" while he was "working for pay for some . . . organization other than the Company," namely, the military. The Court agrees. In fact, substantial evidence supporting the Trustees' position is found in the very physician's letter Mr. Macleod included in his benefits application. This letter, from his physician, states in relevant part as follows:

> Mr. Macleod has a significant and complicated medical history and . . . . *as a result of his military experience*, suffered from chronic balance problems, memory loss, and chronic regional pain syndrome. He underwent extensive medical and radiological evaluations; including several brain/head/body MRI's which [sic] instrumental in providing him the appropriate medical care. In addition, he underwent a lumbar puncture to exclude other potentially treatable causes for *residuals of infection that occurred while in the service of our country*. In the absence of identifiable infectious etiologies, he was diagnosed with chronic

solvent encephalopathy.

*Id.* (emphasis added). Mr. Macleod's physician not only links three physical ailments not found in Mr. Macleod's disability rating – chronic balance problems, memory loss, and chronic regional pain syndrome – to his tenure in the military, but also mentions that the diagnosis of CSE resulted from an inability to otherwise diagnose the "residuals of infection that occurred while in the service of our country." Therefore, the Trustees' conclusion that Mr. Macleod's CSE "occurred" during his time in the military is supported by substantial evidence in the record and is not arbitrary and capricious.

Mr. Macleod next argues that the Trustees' adoption of the military exclusion contradicts the plain meaning of the Plan in that the exclusion does not contemplate a Trustee "review of the facts of the case," as required by Section I. Therefore, Mr. MacLeod argues, the Trustees' denial of his benefits application pursuant to the military exclusion was "arbitrary, illegal, capricious unreasonable and not made in good faith . . . [and] is not supported by the substantial evidence and is contrary to established principles of law." Am. Compl. [doc. # 19] ¶ 20. The Court agrees that the manner in which the Trustees decided Mr. Macleod's application for benefits – by deferring to a categorical military exclusion rather than by reviewing the particular facts of Mr. Macleod's case – was an unreasonable interpretation of Plan language, which explicitly requires the Trustees to engage in a case-by-case review of any such benefits application.[3]

The Plan's language is clear and unambiguous on this point. It provides that in the event an "illness, accident or injury occurs while the Participant is working for pay for some person or

---

[3] Because the Court decides that the military exclusion was an unreasonable interpretation of the Plan's unambiguous language, the Court need not and does not address Mr. Macleod's arguments regarding the way in which the exclusion was adopted, the availability of the Summary Plan Document ("SPD") to Mr. Macleod, and any ambiguity of the language in the SPD.

organization other than the Company, payment of benefits under this Plan shall be made only at the discretion of the Board of Trustees *after their review of the facts of the case*." Pl.'s Mem. in Supp. of Mot. for Partial Summ. J. [doc. # 33] Ex. A-4 at 8 (emphasis added).  The Plan's reference to a "review of the facts of the case" plainly requires the Trustees to consider each request for benefits on the basis of the particular facts presented.

As counsel for Defendants admitted at oral argument, the Trustees' decision to deny Mr. Macleod's application was made pursuant to the categorical military exclusion and did not entail an individualized consideration of the particular facts of his application.  *See Pulvers*, 210 F.3d at 93 ("[W]here the adminstrator imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words, . . . [its] actions may well be found to be arbitrary and capricious.") (internal quotations omitted and alterations in original).  Article VI, Section I undoubtedly grants the Trustees' discretion to grant or deny Mr. MacLeod's application for benefits.  However, the Plan requires the Trustees to exercise that discretion only after a "review the facts of [his] case," not in accordance with a categorical exclusion, such as the military exclusion, which is not based upon the particular facts presented by an applicant for benefits.

The Trustees certainly have the authority to amend the Plan to categorically exclude any benefits for disabilities that can be traced back to military service.  But if that is what the Trustees intend to do, they must adhere to the formalities and procedures for amending the Plan that are provided in the Plan itself.  As Defendant readily concedes, those procedures were not followed in this case, and the military exclusion was adopted, not as a Plan amendment but rather as a categorical interpretative rule.  Defs.' Mem. of Law in Supp. of Cross-Motion For Summ. Judg. [doc. # 36] at 6 ("[T]he Plan was not amended.  What occurred, as noted above, is that the Trustees made a

decision as to how they would deal with military service-related disabilities."). As Defendants put it: "The Trustees decided in September 2002 that, rather than consider military-caused disabilities on a claim by claim basis, they would exclude them generally . . . ." *Id.* at 8.

The difficulty with this approach is that the Plan language requires the Trustees to consider military-caused disabilities on a claim-by-claim basis "after their review of the facts of the case." By adopting their categorical approach to military-caused disabilities, the Trustees in effect wrote the words "review of the facts of the case" out of the Plan. *Cf. Zervos v. Verizon N.Y.*, 277 F.3d 635, 647 (2d Cir. 2002) ("Thus, contrary to basic ERISA principles, [the plan administrator] added additional language to the policy."). Yet nothing in the Plan gives the Trustees authority to effect this type of substantive change in the terms of the Plan, absent a formally adopted amendment, which did not occur here. *See Inter-Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry.*, 520 U.S. 510, 515-16 (1997) ("An employer may, of course, retain the unfettered right to alter its promises, but to do so it must follow the formal procedures set forth in the plan.") (citing 29 U.S.C. § 1102(b)(3) (requiring the plan to "provide a procedure for amending such plan"); *Curtiss-Wright Corp. v. Schoonejongen,* 514 U.S. 73, 78 (1995) (noting that the "cognizable claim [under ERISA] is that the company did not [amend its welfare benefit plan] in a permissible manner")); *cf. Devlin v. Transportation Communs. Int'l Union*, 173 F.3d 94, 103 (2d Cir. 1999) (upholding defendants' amendment procedure because it was in accordance with "the clear amendment language of the Plan Instrument").

Because the Trustees failed to consider the evidence Mr. Macleod submitted in his application for benefits and because this Court's review of the Trustees' decision is limited by the arbitrary and capricious standard to the administrative record, the Court "must remand to the

Trustees with instructions to consider additional evidence unless no new evidence could produce a reasonable conclusion permitting denial of the claim or remand would otherwise be a 'useless formality.'" *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995). The Court recognizes that on remand, the outcome of Mr. Macleod's benefits application may very well be the same. However, because it appears from the record and from the representations of the Defendants' attorney at oral argument that the Trustees did not review Mr. Macleod's application past the point at which they determined the military exclusion applied, the Court cannot say for a certainty that on remand and after a full review of his application the Trustees will deny his application. Moreover, because the language of the Plan gives the Trustees broad discretion to grant or deny Mr. Macleod benefits, the Court cannot say that "no new evidence [evaluated by the Trustees] could produce a reasonable conclusion permitting denial of the claim." To do so would cast this Court in the role of a "substitute plan administrator[]," which the Second Circuit has cautioned against. *See Miller*, 72 F.3d at 1071. It is the full review of the particular facts of his case – absent the influence of the invalid military exclusion – to which Mr. Macleod is entitled under the Plan and which the Trustees failed to provide him.

Mr. Macleod argues that a remand to the Trustees is inappropriate, and that for several reasons the Court should instead direct the Plan to grant him total disability benefits and other compensation attendant thereto. First, he contends that under Article VI, Section I, the carve-out for injuries sustained while in the employ of another organization, is meant to cover situations where a worker is covered by either that organization's insurance carrier or a workers' compensation program. *See, e.g.*, Pl.'s Mem. in Supp. of Mot. for Partial Summ. J. [doc. # 33] at 9-12. He points to the use of the words "potential disability coverage liability" in the denial of his administrative

9

appeal, as well as the reference in a different part of Section I to state and federal workers' compensation as confirmation of his reading of Article VI, Section I. According to Mr. Macleod, because he is not entitled to any benefits from the military on account of his recently-developed CSE, he does not fall within the language or intent of the carve-out, and therefore "no new evidence could produce a reasonable conclusion permitting denial of the claim." *Miller*, 72 F.3d at 1071.

The difficulty with Mr. MacLeod's argument is that the Second Circuit has repeatedly emphasized that "[i]n a situation 'where both the trustees of [an ERISA plan] and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the trustees' interpretation must be allowed to control.'" *Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 146 (2d Cir. 2003) (citing *Miles v. N.Y. State Teamsters Conference Pension & Ret. Fund Empl. Pension Benefit Plan*, 698 F.2d 593, 601 (2d Cir. 1983)) (alteration in original). The Second Circuit has "also stressed that courts 'are not free to substitute [their] own judgment for that of the [plan administrator] as if [they] were considering the issue of eligibility anew.'" *Celardo*, 318 F.3d at 146 (citing *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995)). The Plan gives the Trustees authority to interpret the terms of the Plan. While Mr. Macleod's structural interpretation of Article VI, Section I is certainly a plausible construction of the Plan language, that fact alone is insufficient to override the Trustees' similarly reasonable interpretation of the Plan's provisions. Because the Court must bow to the Trustees' reasonable interpretation of the Plan's terms, the Court cannot direct the Trustees to grant Mr. Macleod benefits on the basis of his construction of Article VI, Section I.

Second, Mr. Macleod asserts that a remand to the Trustees would be "a useless formality" or a "useless gesture" because the Trustees will not change their minds about denying him benefits. *See* Plaintiff's Post-Hearing Memorandum of Law [doc. # 47] at 2. Mr. Macleod cites *MacMillan*

*v. Provident Mutual Life Insurance Co. of Philadelphia*, 32 F. Supp. 2d 600, 616 (W.D.N.Y. 1999), for the proposition that a "remand becomes a 'useless gesture' or 'useless formality' where it is not likely the plan administrator would alter its decision on an award of benefits." Pl.'s Post-Hearing Mem. of Law [doc. # 47] at 2.

*MacMillan* is easily distinguished from the case at bar, because the court in that case determined that a *de novo* standard was the appropriate standard of review of an insurer's decision to deny benefits. *See MacMillan*, 32 F. Supp. 2d at 610. The court stated that if the insurer were to reaffirm its denial of benefits, "the case would return to me, who, as the finder of fact, would give no deference to UNUM's decision. To remand under these circumstances, then, would probably accomplish nothing more than to waste the time and effort of everyone involved." *Id.* at 616. While the court also stated that "even when the arbitrary-and-capricious standard applies, remand is unnecessary if it would be a 'useless gesture,'" *id.* (citing *Miller*, 72 F.3d at 1071), the court acknowledged that "remand is more appropriate when the court applies the arbitrary-and-capricious standard of review, since under that standard the court must give some deference to the administrator's findings," *id.*

It is certainly true that a court need not remand a case where to do so would be a "useless formality." However, the present case is distinguishable from those cases that have refused to remand on that basis. For example, in many such cases, the plan administrators had made an unreasonable determination based upon a full evaluation of the record, or had already been given an opportunity by the court to evaluate the plaintiff's claim appropriately. *See, e.g.*, *Zuckerbrod v. Phoenix Mut. Life Ins. Co.*, 78 F.3d 46, 51 n.4 (2d Cir. 1996) ("*Miller* acknowledged that further consideration by a fiduciary may in some circumstances be a 'useless formality.' Such is the case

11

here, where the difficulty is not that the administrative record was incomplete, but that a denial of benefits based on the record was unreasonable.") (citation omitted); *Wein v. Prudential Ins. Co. of Am.*, 03-CV-6526 (NGG)(CLP), 2006 WL 2844176, at *13 (E.D.N.Y. Oct. 2, 2006) ("Given the fact that this claim has been subject to numerous administrative appeals, independent medical examinations, and opportunities by both parties to clarify the record, I find that the administrative record is complete, and that further consideration of Wein's claim by Prudential would be a 'useless formality.'").

Here, the Trustees did not deny Mr. Macleod's application after fully evaluating his application materials. Therefore, his situation is more akin to that of *Crocco v. Xerox Corp.*, 137 F.3d 105, 108 (2d Cir. 1998). In that case, the Second Circuit affirmed (on substantially the same basis) the district court's decision that Plan Administrators had denied a benefits applicant a "full and fair review" under 29 U.S.C. § 1133(2). The district court found that the Administrators' decision was arbitrary and capricious and remanded to the Administrators in order to effectuate a "full and fair review," because "this court does not believe that granting Crocco's benefits is the only decision [the plan fiduciary] could reasonably make . . . ." *Crocco v. Xerox Corp.*, 956 F. Supp. 129, 144 (D. Conn. 1997). Likewise, this Court does not believe that granting Mr. Macleod's benefits is the only decision the Trustees could reasonably make. In fact, Mr. MacLeod's personal situation is a compelling one. Accordingly, the Court does not believe that remanding to the Trustees would be a "useless formality" within the meaning of Second Circuit case law.

Ultimately, this Court must defer to the Trustees' reasonable exercise of their discretion, but that exercise of discretion has not yet occurred. Even Mr. MacLeod seems to acknowledge the appropriateness of remand in this case in his post-hearing memorandum. *See* Pl.'s Post-Hearing

12

Mem. of Law [doc. # 47] at 3 ("A remand is an appropriate and in fact the required remedy in cases . . . where the plan administrator failed to consider relevant evidence before him . . . .").[4] Therefore, the Court must remand the matter to the Trustees for them to review the facts of Mr. MacLeod's case and exercise the discretion that the Plan accords them.

### III.

In his Memorandum in Support of Partial Summary Judgment [doc. # 33] and in his Supplemental Memorandum of Law Regarding Attorney's Fees [doc. # 49], Mr. Macleod asks the Court to award him attorney's fees and costs. ERISA expressly allows a court, in its discretion, to award or deny reasonable attorney's fees. *See* 29 U.S.C. § 1132(g)(1) (2006). In *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir. 1987), the Second Circuit identified the following factors for a district court to consider when deciding whether to award attorney's fees in an ERISA case: "(1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants." *Id.* at 871. The *Chambless* test does not require a party to demonstrate that it is a "prevailing party" for the purposes of Rule 54(d)(1) of the *Federal Rules of Civil Procedure* in order to prevail on a motion for attorney's fees and costs. *See Miller*, 72 F.3d at 1074 ("Section

---

[4] Mr. Macleod further argues that the Trustees should be estopped from denying him benefits because he was told by two employees at the time he opted to enroll in the Plan that he would not be disqualified from coverage on the basis of his tenure in the military. Since the Court is remanding the decision on Mr. Macleod's eligibility for benefits and since the Trustees have not yet exercised their discretion in this regard, Mr. Macleod's estoppel argument is not yet ripe. Accordingly, the Court expresses no view one way or the other on that issue, an issue which the Trustees may well want to consider on remand in exercising their discretion.

502(g)(1) contains no requirement that the party awarded attorneys' fees be the prevailing party.").

Mr. Macleod asks the Court to award him reasonable attorney's fees and costs on the following grounds: (1) the Trustees acted in bad faith because they improperly "adopted a series of new exclusions to the SPD and under the guise of interpretation of the Disability Plan applied the military exclusion to the plaintiff," thus impermissibly amending the Plan; (2) P&G could easily satisfy an award of attorneys' fees; and (3) an award of attorneys' fees would deter the Trustees from again attempting to amend the Plan without following the formal amendment process provided by the Plan. He also contends that the fourth *Chambless* factor weighs in favor of an award of fees and costs and that other Plan participants will benefit from his lawsuit. Pl.'s Supp. Mem. of Law Regarding Atty's Fees [doc. # 49] at 1-3. The Defendants have nowhere contested Mr. MacLeod's request for attorney's fees.

The Court agrees with Mr. Macleod that the *Chambless* factors support an award of attorney's fees in this case. The Court must first consider whether the Trustees' actions reflect "bad faith or culpability" within the meaning of *Chambless*. The standards for "bad faith" and "culpability" are distinct. *Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 450 (2d Cir. 2006). "[A] defendant is 'culpable' under *Chambless* where it 'violated ERISA, thereby depriving plaintiffs of rights under a pension plan and violating a Congressional mandate.'" *Id.* (citing *Salovaara v. Eckert*, 222 F.3d 19, 28 (2d Cir. 2000)). While "the culpability of the losing party and the relative merits of the parties' positions are not dispositive under the five-factor test. . . . these considerations weigh heavily in the balance . . . ." *Anita Foundations, Inc. v. ILGWU Nat'l Retirement Fund*, 902 F.2d 185, 189 (2d Cir. 1990).

In *Paese*, the Second Circuit upheld a district court's finding for the plaintiff on the first

prong of the *Chambless* test, because "it was entirely appropriate for the district court to consider the degree to which 'Hartford failed to engage in a fair and open-minded consideration of Paese's claim,' as an indicator of Hartford's culpability, not necessarily bad faith." *Paese*, 449 F.3d at 451. Here, the Trustees' adoption of the categorical military exclusion violated ERISA by contravening the plain language of the Plan and deprived Mr. Macleod of procedural rights and fact-specific consideration to which he was entitled under the Plan. In so doing, the Trustees failed to adhere to the requirements of the Plan and in that sense are "culpable" within the meaning of *Chambless*. The Court need not and does not find that the Trustees acted in bad faith in order to find the first *Chambless* factor in Mr. Macleod's favor. *See Paese*, 449 F.3d at 450 ("Because the district court found Hartford culpable, it need not have considered explicitly whether Hartford acted in bad faith to satisfy the first part of the *Chambless* test."); *Locher v. UNUM Life Ins. Co. of Am.*, 389 F.3d 288, 298-99 (2d Cir. 2004) (affirming the district court finding that though the insurer "did not act in bad faith in rejecting the [insured's] claim," the insurer was nonetheless "culpable").

  As to the other factors, there is no doubt that P&G can satisfy an award of reasonable attorney's fees. Moreover, an award of fees may deter the Trustees and trustees in other cases from adopting *per se* rules in contravention of the plain language of a governing plan or persisting in pursuing in litigation a position that is clearly at odds with the unambiguous language of such a pension plan. The relative merits of the parties' positions, at least insofar as the issue of whether the Trustees could defer to the military exclusion in deciding Mr. Macleod's application, are also sufficient to persuade the Court to exercise its discretion to award reasonable attorney's fees to Mr. Macleod. Finally, while Mr. Macleod brought this suit on behalf of himself, rather than to confer "a common benefit," *Chambless*, 815 F.2d at 871, the Trustees adopted this exclusion in order to

15

affect benefit determinations for a large class of participants. Therefore, Mr. Macleod's lawsuit will likely be of benefit to a large number of participants, whose applications would otherwise be summarily denied on the ground of the military exclusion. Therefore, on balance, the Court believes that Mr. Macleod has satisfied the requirements for an award of reasonable attorney's fees under ERISA.

While ERISA permits a court, as a matter of discretion, to award attorney's fees and costs to either party, costs are awarded as a matter of course to the "prevailing party" in a lawsuit under Rule 54(d)(1) of the *Federal Rules of Civil Procedure*. *See* Fed. R. Civ. P. 54(d)(1) (for "Costs Other than Attorney's Fees," "costs shall be allowed as of course to the prevailing party unless the court otherwise directs"). "A prevailing party is one that has 'succeeded on any significant issue in litigation which achieved some of the benefit the party sought in bringing suit,' such that the party is able to 'point to a resolution of the dispute which changes the legal relationship between itself and the [adversary].'" *Kerin v. USPS*, 218 F.3d 185, 189 n.1 (2d Cir. 2000) (citing *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92, 103 L. Ed. 2d 866, 109 S. Ct. 1486 (1989)) (alteration in original). Because the Court determines that Mr. Macleod is a "prevailing party" under Rule 54(d)(1), it awards him costs under that rule.

The Second Circuit has left open the possibility that plaintiffs, like Mr. Macleod, who secure a remand of an ERISA trustee's decision may be considered "prevailing parties" for the purposes of an award of attorney's fees and costs. *See Miller*, 72 F.3d at 1074 ("Moreover, the district court may in fact determine that Miller is the prevailing party to the extent that her motion for summary judgment claimed that the Fund's denial was arbitrary and capricious."). The Second Circuit has also confirmed that a prevailing party is one who has "succeeded on any significant issue in [the]

16

litigation, regardless of the magnitude of the relief obtained, if he received actual relief on the merits of his claim [that] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 757 (2d Cir. 1998) (internal quotation marks omitted and alterations in original). Because the Trustees on remand must now evaluate Mr. Macleod's claim on an individual basis, the Court concludes that Mr. Macleod is a prevailing party for the purposes of these motions for summary judgment, and hereby awards him reasonable costs. Even if it did not conclude that Mr. Macleod is a prevailing party in this lawsuit, the Court would exercise its discretion under *Chambless* to award him costs for the reasons outlined in its earlier discussion of attorney's fees.

The Court advises Mr. Macleod that an award of costs, like the award for attorney's fees, is limited to those costs and fees incurred in preparation for and during the course of this lawsuit. The award cannot cover any costs or fees incurred in the prior administrative process. *See Peterson v. Continental Cas. Co.*, 282 F.3d 112, 121 (2d Cir. 2002) ("ERISA authorizes the award only for fees incurred in relation to a suit filed in a court of competent jurisdiction. Therefore, Peterson may not collect fees incurred during the initial administrative process."). Mr. Macleod may later petition the Court for any fees and costs incurred in the subsequent administrative remand, but any such award will be at the Court's discretion. *See id.* at 122.

### IV.

In sum, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Partial Summary Judgment [doc. # 32] and DENIES Cross-Motion of Defendants for Summary Judgment [doc. # 35]. Plaintiff's motion is GRANTED insofar as this case is now remanded to the Plan Trustees to decide Mr. Macleod's application for total disability benefits in accordance with this

opinion. It is DENIED in all other respects. The Court also awards Plaintiff reasonable attorneys fees and costs. Plaintiff shall submit to the Court no later than **November 20, 2006,** a statement of reasonable costs and attorneys fees, along with documentation supporting Plaintiff's request. Plaintiff shall provide Defendants with such documentation in advance of the filing and shall consult with Defendants in an effort to agree upon an appropriate amount.

                          IT IS SO ORDERED,

                /s/      Mark R. Kravitz
                     United States District Judge

Dated at New Haven, Connecticut: **November 6, 2006.**